07 CV 6784

Judge Hellerstein

Paul B. Gaffney
Joseph M. Terry
Zoe C. Scharff
Neelum J. Wadhwani
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HALCYON ASSET MANAGEMENT, LLC,

                Plaintiff,

- against -

HALCYON VENTURES, LP,
HALCYON REAL ESTATE PARTNERS, LP
HALCYON REAL ESTATE PARTNERS MASTER FUND, LLC,

                Defendants.
-----------------------------------------------------------------X

No.

**ECF CASE**

**COMPLAINT**

**JURY TRIAL DEMANDED**

[Stamp: JUL 27 2007 U.S.D.C. S.D.N.Y. CASHIERS]

Plaintiff, through undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff Halcyon Asset Management, LLC, a New York-based, global asset management and financial investment services firm, brings this action to vindicate its rights under trademark law and the common law of unfair competition and to enjoin Defendants Halcyon Ventures, LP, Halcyon Real Estate Partners, LP, and Halcyon Real Estate Partners Master Fund, LLC, from their unauthorized and infringing use of the well-established HALCYON mark in the fields of financial investment and services, namely asset management

and financial investing. Defendants' unauthorized use of the HALCYON mark in these fields has already created actual confusion in the marketplace, has usurped Plaintiff's goodwill, and has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff.

## JURISDICTION AND VENUE

2.  This is a civil action under the federal Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a); N.Y. Gen. Bus. Law § 360-k; and the common law of New York.

3.  This Court has exclusive subject-matter jurisdiction over this action for trademark infringement and unfair competition pursuant to 28 U.S.C. §§ 1338(a), (b). This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, and 15 U.S.C. § 1121, based on acts of trademark infringement and unfair competition committed in the United States.

4.  This Court has personal jurisdiction over Defendants pursuant to N.Y.C.P.L.R. § 302(a). Specifically, Defendants committed tortious conduct in the State of New York, and have committed, and continue to commit, tortious conduct outside the State of New York that has caused, and continues to cause, injury to a person within the State, and Defendants have or reasonably should have the expectation that the act will have consequences in the state and Defendants also derive substantial revenue from interstate commerce.

5.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES
### HALCYON ASSET MANAGEMENT AND THE HALCYON MARK

6.  Plaintiff Halcyon Asset Management, LLC ("Halcyon"), is a Delaware corporation, with a principal place of business in New York.

7.  Halcyon was founded in 1981 as a financial investment services firm, primarily serving as an asset manager of investment vehicles for U.S. high net worth individuals investing in arbitrage opportunities arising from the merger of public corporations.

8.  Since its founding, Halcyon has naturally and continually expanded the services that it offers as well as the types of funds that it manages.

9.  Today, Halcyon is a global asset management and financial investment services firm, managing over $13 billion of assets in investment vehicles for investors, which include leading public and private pension funds, endowments, foundations, financial institutions, insurance companies, funds of hedge funds, and high net worth individuals.

10.  Each of the investment vehicles managed by Halcyon is a Halcyon affiliate, part of the Halcyon Group, and, with the exception of certain limited accounts that are managed for third parties and irrelevant to this action, operates under the HALCYON mark. In its capacity as an asset manager, Halcyon and its affiliates make and execute investment decisions for an ever-growing array of investment vehicles, including, but not limited to, hedge funds, managed accounts, collateralized debt obligation leveraged vehicles and collateralized loan obligation leveraged vehicles.

11.  Under the management of Halcyon and its affiliates, the Halcyon Group's investment vehicles, in turn, acquire and trade a wide and ever-growing variety of financial products, including, but not limited to, traditional debt and equity securities, derivative products, stressed and distressed asset-back securities, collateralized debt obligations, collateralized loan obligations, and foreign currencies.

12.  In addition, for well over a decade, and certainly prior to 2004, the Halcyon Group has been a public and conspicuous investor in the real estate arena. Since at least

the early 1990s, the Halcyon Group's investment vehicles have been investing in real estate mortgages, including large commercial projects and real estate investment trusts. Since at least 2005, they have been investing in vehicles owning interests in real estate partnerships; more recently, they have been investing directly in commercial and residential real estate property. Moreover, one of the firm's portfolio managers sits on the board of a large, publicly traded real estate investment trust.

13.     As a natural and direct expansion of its operations and growth, the Halcyon Group has made public its intention to manage private equity funds and has launched a dedicated platform ("Halcyon Real Estate") to manage real estate focused funds. Launched in late 2006, Halcyon Real Estate has assisted the Halcyon Group's real estate related investment efforts, including sourcing investments in real estate properties and soliciting accredited investors for real estate funds.

14.     Halcyon first used, and first used in commerce, the HALCYON service mark in 1982 in connection with its Halcyon Group investment vehicles. Since 1995, Halcyon has been using, and using in commerce, HALCYON with respect to its asset management operations, including, for example, the placement of "tombstone" notices in the Wall Street Journal. *See, e.g.,* Exhibit 1.

15.     HALCYON was registered by the United States Patent & Trademark Office to Halcyon on July 27, 1999 as a service mark for "financial investment in the field of securities" with a date of first use and first use in commerce in 1982. Halcyon currently has a pending application before the United States Patent and Trademark Office (dated May 15, 2007) for first use and first use in commerce in 1982 of HALCYON as a service mark for "financial investment services in the field of asset management; financial investment in the field of

4

securities; investment services, namely, asset acquisition and investment management services; and fund investment services." *See* Exhibits 2 & 3.

16.  Halcyon possesses rights under federal and state law in the trademark HALCYON in connection with the fields of financial investment and services, including asset and investment management, fund investment services, and security and asset acquisition. This trademark is inherently distinctive and/or has acquired secondary meaning by virtue of the Plaintiff's extensive use of it and by virtue of the Plaintiff's extensive promotion in connection with it.

17.  Through its successful expansion and investment strategies, Halcyon has developed a widespread reputation for excellence in the fields of financial investment and services. For example, the August 14, 2006 issue of *Financial Times* noted Plaintiff's "long-term track record" as a financial and investment services firm. *See* Exhibit 4. Because of its twenty-six years of established goodwill, Halcyon is regularly favored with above-market terms in its transactions with counter-parties. Moreover, Plaintiff's reputation is well-known in all sectors of financial investment and services, as well as among relevant consumers, including the investment community, transactional counter-parties, brokers, and lenders. In October 2006, *MarHedge*, a leading industry publication, succinctly described Plaintiff as "beyond the pinnacle." *See* Exhibit 5. Indeed, *Absolute Return Magazine*, the premier publication for the hedge fund community, has listed a Halcyon fund, managed by Halcyon, as a "brand name" multi-strategy hedge fund every month for the last two years in its recurring monthly feature entitled "Brand Names." *See, e.g.,* Exhibit 6.

18. To avoid both dilution of this established goodwill and confusion in the market, Plaintiff has consistently and aggressively acted to stop other uses of the HALCYON name in the area of asset management and/or financial and investment services.

## DEFENDANTS

19. Defendant Halcyon Ventures, LP ("Halcyon Ventures") is a Massachusetts company, with a principal place of business in Massachusetts.

20. On information and belief, Halcyon Ventures was founded in 2004 as a real estate investment and development firm.

21. Halcyon Ventures was improperly awarded registration of the service mark, HALCYON, for the limited purpose of "real estate services, namely acquisition and financing of commercial real estate," on December 12, 2006. *See* Exhibit 7.

22. Defendant Halcyon Real Estate Partners, LP ("Halcyon Fund I") is a Delaware company, with a principal place of business in Delaware. Defendant Halcyon Fund I is a fund owned by Defendant Halcyon Ventures. At all relevant times, Halcyon Ventures controlled, directed, assisted, and participated in the operations of Halcyon Fund I.

23. Defendant Halcyon Real Estate Partners Master Fund, LLC ("Halcyon Fund II") is a Delaware company, with a principal place of business in Massachusetts. Defendant Halcyon Fund II is a fund owned by Defendant Halcyon Ventures. At all relevant times, Halcyon Ventures controlled, directed, assisted, and participated in the operations of Halcyon Fund II.

24. Each of the Defendants named herein is, and at all times averred herein was, a party to the unlawful activities complained of herein, and has conspired with and/or acted in concert or combination with the other named Defendants and/or has aided and abetted the

other Defendants and/or has acted as an agent for and/or alter ego of the other Defendants with respect to the actions and matters described in this Complaint.

## DEFENDANTS' WRONGFUL CONDUCT

25. In July 2007, Plaintiff Halcyon learned that Defendants Halcyon Ventures, Halcyon Fund I, and Halcyon Fund II were engaged not simply in "real estate services, namely acquisition and financing of commercial real estate," as their improperly granted December 12, 2006 service mark registration suggested, but were instead engaged in asset management—including Defendant Halcyon Ventures' managing of Defendants Halcyon Fund I and Halcyon Fund II—and other financial services, including trading in foreign currencies and securities.

26. Defendants have engaged in and continue to engage in asset management and financial and investment services. In fact, Halcyon Ventures now markets itself not merely as a real estate developer, but also as a fund manager. Moreover, Halcyon Ventures has solicited and continues to solicit potential investors for its funds and its asset management services under the HALCYON name. And Halcyon Ventures has transacted and continues to transact business with counter-parties under the HALCYON name.

27. Defendants' asset management activities and investment services are likely to cause and, in fact, have already caused confusion in the market and among clients.

28. On or about July 9, 2007, Plaintiff Halcyon was contacted by the foreign currency trading department of Deutsche Bank AG ("DB") to inquire about two multi-million-dollar transactions in the Canadian Dollar, executed under the name "Halcyon Real Estate Partners." Because the mark HALCYON, in the fields of financial investment and services, has become so associated in the minds of relevant consumers with Plaintiff Halcyon, DB mistakenly

assumed that it had conducted this trade with Plaintiff, a long-term DB client, rather than Defendants.

29. On information and belief, this is merely one example of actual confusion in the marketplace that has taken place, and will continue to take place, unless Defendants are enjoined from infringing the HALCYON mark in the fields of financial investment and services.

30. By adopting HALCYON as the name under which they conduct asset management and investment services activities, Defendants have infringed Plaintiff's marks and misappropriated or otherwise attempted to capitalize on Plaintiff's name and/or reputation.

31. At all relevant times, Defendants had actual or constructive knowledge of Plaintiff's prior use in commerce of the HALCYON mark.

## FIRST CLAIM FOR RELIEF

*(For Unfair Competition Pursuant to 15 U.S.C. § 1125(a))*

32. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff possesses rights under federal and state law in the trademark HALCYON in connection with the fields of financial investment and services, including asset and investment management, fund investment services, and security and asset acquisition. Plaintiff's rights include priority of use. Plaintiff's mark is also inherently distinctive. Moreover, as a result of the efforts and investments of Plaintiff, the trademark has also achieved substantial secondary meaning.

34. Through Defendants' unauthorized use in commerce of the HALCYON mark to provide the same services in the same marketplace as Plaintiff, Defendants are using Plaintiff's trademark in a way that is likely to (i) convey the false and misleading impression that

Plaintiff endorses, operates, or participates in Defendants' business; (ii) cause consumer confusion; and (iii) usurp Plaintiff's prospective business opportunities. These actions constitute unfair competition and trademark infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35.     Defendants are knowingly violating Plaintiff's rights in its trademark. Such illegal use has actually caused confusion and mistake and is likely to continue causing confusion and mistake. Because Defendants are violating Plaintiff's prior use rights with the purpose and intent of causing confusion and deception, Plaintiff is entitled to the remedies set forth in 15 U.S.C. § 1117, as well as preliminary and permanent injunctive relief. Defendants' acts involve such circumstances that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to 15 U.S.C. § 1117. Finally, because Defendants' trademark was improperly awarded, the court should order the cancellation of Defendants' mark pursuant to 15 U.S.C. § 1119.

## SECOND CLAIM FOR RELIEF

*(For Trademark Infringement Pursuant to 15 U.S.C. § 1114(1)(a))*

36.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 35 as if fully set forth herein.

37.     Plaintiff is the owner of registered federal trademarks that are associated with the services Plaintiff provides in the fields of financial investment and services, including: asset and investment management, fund investment services, and security and asset acquisition. Plaintiff's rights include priority of use. Plaintiff's marks are also inherently distinctive. Moreover, as a result of the efforts and investments of Plaintiff, the trademarks have also achieved substantial secondary meaning.

38. By employing copies or colorable imitations of Plaintiffs' distinctive registered trademarks in connection with all aspects of their services, including, but not limited to, their business identities, operations, advertising and website and email addresses, Defendants have used, and continue to use, Plaintiffs' trademarks in commerce without authorization. These actions constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

39. Defendants are knowingly infringing upon Plaintiff's rights in its trademark. Such illegal use has actually caused confusion and mistake and is likely to continue causing confusion and mistake. Because Defendants are violating Plaintiff's prior use rights with the purpose and intent of causing confusion and deception, Plaintiff is entitled to the remedies set forth in 15 U.S.C. § 1117, as well as preliminary and permanent injunctive relief. Defendants' acts involve such circumstances that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to 15 U.S.C. § 1117. Finally, because Defendants' trademark was improperly awarded, the court should order the cancellation of Defendants' mark pursuant to 15 U.S.C. § 1119.

## THIRD CLAIM FOR RELIEF

*(For Unfair Competition Pursuant to New York Common Law)*

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41. Plaintiff has invested substantial time, money, and labor in developing, implementing, and promoting their investment strategies and services. Plaintiff has also invested substantial time, money, and labor in building goodwill in these strategies and services and/or in its trademarks.

42. By unfairly misappropriating the long-established goodwill of Plaintiff and/or otherwise attempting to capitalize on Plaintiff's name or reputation, Defendants have engaged in, and will continue to engage in, unfair competition with Plaintiff.

43. Defendants' knowing infringement of Plaintiff's trademarks actually confused, and is likely to continue confusing, the Plaintiff's investment services with that of the Defendants' investment services. Because Defendants are violating Plaintiff's prior use rights with the purpose and intent of causing confusion and deception, Plaintiff is thus entitled to lost profits, as well as preliminary and permanent injunctive relief. Further, Defendants' acts involve such circumstances that punitive damages should be assessed.

## FOURTH CLAIM FOR RELIEF

*(For Trademark Infringement Pursuant to N.Y. Gen. Bus. § 360-k (2007))*

44. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff is the owner of registered federal trademarks that are associated with the services Plaintiff provides in the fields of financial investment and services, including: asset and investment management, fund investment services, and security and asset acquisition. Plaintiff's rights include priority of use. Plaintiff's marks are also inherently distinctive. As a result of the efforts and investments of Plaintiff, the trademarks have also achieved substantial secondary meaning; the marks' primary significance to the consuming public is their association with Plaintiff's services.

46. By employing copies or colorable imitations of Plaintiffs' distinctive registered trademarks in connection with all aspects of their services, including, but not limited to, Defendants' business identities, operations, advertising, and website and email addresses,

Defendants have used, and continue to use, Plaintiffs' trademarks in commerce without authorization.

47.   These actions constitute trademark infringement in violation of section 360-k of New York's General Business Law.

48.   Defendants are knowingly infringing upon Plaintiff's rights in its trademarks. Such illegal use has actually caused confusion and mistake and is likely to continue causing confusion and mistake. Because Defendants are violating Plaintiff's prior use rights with the purpose and intent of causing confusion and deception, Plaintiff is entitled to the remedies set forth in section 360-m of New York's General Business Law, as well as preliminary and permanent injunctive relief. Defendants' acts involve such circumstances that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to section 360-m.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

49.   On Count I, for preliminary and permanent injunctive relief; cancellation of Defendants' mark; Defendants' profits; damages; attorneys' fees, full costs, and disbursements in this action; and all statutory and other damages to which Plaintiff may be entitled.

50.   On Count II, or preliminary and permanent injunctive relief; cancellation of Defendants' mark; Defendants' profits; damages; attorneys' fees, full costs, and disbursements in this action; and all statutory and other damages to which Plaintiff may be entitled.

12

51. On Count III, for preliminary and permanent injunctive relief; lost profits; and punitive damages.

52. On Count IV, for preliminary and permanent injunctive relief; Defendants' profits; damages; treble profits and damages; attorneys' fees; and all statutory and other damages to which Plaintiff may be entitled.

53. On all Counts, for such other and further relief as the Court may deem appropriate and just.

        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, D.C. 20005
        Telephone: (202) 434-5000
        Facsimile: (202) 434-5029

        By: /s/ Zoe Scharff
        Paul B. Gaffney
        Joseph M. Terry
        Zoe C. Scharff (ZS 8114)
        Neelum J. Wadhwani

        *Attorneys for Plaintiff*

July 27, 2007